IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JOHN C. DIXON** <br> 4120 Bald Eagle court <br> Randallstown, MD 21133 <br><br> Plaintiff, <br> vs. <br><br> **LGX SERVICES LLC** <br> 8011 Stansbury Rd, <br> Dundalk, MD, 21222 <br><br> Served on: <br> Northwest Registered Agent Service, Inc <br> 5000 Thayer Center Ste. C <br> Oakland, MD 21550 <br><br> Defendant | Civil Action No.: _____ |

## COMPLAINT & JURY DEMAND

**NOW COMES**, Plaintiff Mr. John C. Dixon, by and through his undersigned attorneys, George A. Rose, Esquire, and Rose Law Firm, LLC, and sues LGX Services LLC, for employment race discrimination. In support of his cause of action Plaintiff states to this Honorable Court:

### I. PRELIMINARY STATEMENT

1. This is action for declaratory, injunctive, monetary, and other appropriate relief against LGX Services LLC. Plaintiff, John Dixon, seeks to redress intentional violations by LGX Services LLC of rights secured to him by the laws of the United States and the State of Maryland. This action arises for: (1) race discrimination in employment in violation of Title VII of the Civil Rights Act of *1964* § 7, 42 U.S.C. § 2000e et seq. (*1964*). ("Title VII"), the Civil Rights Act of 1866 ("Section 1981"), as amended, 42 U.S.C.§ 1981, and Title 20 of Maryland's State Government Article ("Title 20").

1

## II.     PARTIES

2. Mr. John Dixon (hereinafter "Plaintiff" or "Mr. Dixon") is an African American citizen of the United States. Mr. Dixon resides in Baltimore County Maryland.

3. LGX Services LLC, (hereinafter "Defendant" or "LGX") is a trucking and logistics services company incorporated in the State of Virginia. LGX operates from its principal office at 8011 Stansbury Road, Dundalk, MD, 21222.

4. At all times relevant, LGX was an "employer" as defined by 42 U.S.C. § 2000e(b) and employed the requisite number of employees to make it subject to Title VII.

5. At all times relevant, LGX acted by and through the acts of its agents, servants, and or employees.

## III.    JURISDICTION

6. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief. This Court has jurisdiction over Plaintiff's claims under the statutory laws of the State of Maryland pursuant to its supplemental jurisdiction as codified at 28 U.S.C. § 1367.

## IV.     VENUE

7. Venue is proper in this district under 28 U.S.C. *§1391(a)(2),* and *§1391(b)(2)* because Defendant is located in this district, and the events or omissions giving rise to this claim occurred in this district.  Also, venue is proper in this district because the alleged unlawful employment practices were committed in this district, and the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about December 8, 2021, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission (EEOC) Charge No.: 531-2021-02859. On November 29, 2022, the EEOC issued a Probable Cause Determination on the Charge of Discrimination. On December 28, 2022, the EEOC issued Plaintiff a Right To Sue letter. Consequently, Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

## VI. FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

9. On or about June 29, 2020, LGX employed Mr. Dixon as a Class A CDL driver. Mr. Dixon performed his duties and responsibilities satisfactorily and demonstrated effective leadership such that on or about October 15, 2020, LGX offered Mr. Dixon the position of operations manager, which Mr. Dixon accepted on October 16, 2020.

10. On or about October 20, 2020, Mr. Dixon began working as Operations Manager for LGX, following a clear set of job description that was provided by LGX on October 4, 2020. As operations manager, Mr. Dixon oversaw and implemented the successful transition of approximately 25 LGX in a remarkable short time span to meet standards required by Amazon.com Services, LLC, with whom LGX was contracted as a AFP Partner; was commended and praised by LGX drivers on the cleanliness and organization of LGX's trucks; improved and maintained LGX's compliance with transportation regulations; improved and maintained LGX SmartDrive scores while on duty, which were below requirements prior to his promotion to Operations Manager; and created a system during the height of the pandemic which provided each truck with essentials for cleaning and disinfecting, masks, hand sanitizer and wipes; and PPE equipment to ensure driver safety. In addition, with the approval of Defendant's chief operating officer, Mr. Mathew Greenstein, Mr. Dixon implemented a

driver appreciation table in a LGX trailer, stationed with snacks, water, and breakfast at no cost to the Drivers. LGX never issued Mr. Dixon any verbal or written disciplinary action for any job performance or conduct issues.

11. Sometime in March 2021 Mr. Greenstein offered Mr. Dixon a promotion to an upcoming opening for a director of operations position. Mr. Greenstein sought Mr. Dixon's assurance that Mr. Dixon would accept the position, and Mr. Dixon agreed. On or about June 30, 2021, when the director of operation position became open and available, Mr. Greenstein and Mr. Ian Francis, LGX's chief executive officer, informed Mr. Dixon that Mr. Dixon would not take up the director of operations position and instead the position would be given to Mr. Ray Naimaster, a white LGX driver who was a subordinate of Mr. Dixon, and who Mr. Dixon had trained. Mr. Greenstein and Mr. Francis are also white Americans.

12. Mr. Naimaster was less experienced and less qualified than Mr. Dixon for the director of operations position. Mr. Naimaster had no management and supervisory duties at LGX and his resume showed he neither had the qualification or experience to be given the director of operations position over Mr. Dixon. Furthermore, As Mr. Dixon's subordinate, Mr. Naimaster had a history of misconduct, reprimand, insubordination, and violating LGX policies and procedures.

13. In July 2021, LGX driver Mr. Terrance Perez complaint about a racially offensive remark made by Mr. Naimaster. Mr. Perez also reported to Mr. Dixon about the incident with Mr. Naimaster, and Mr. Dixon encouraged and told Mr. Perez to contact and follow up on the incident with Mr. Greenstein. Mr. Perez reported the incident to LGX's HR director, who knew that Mr. Dixon told Mr. Perez to follow up on the incident. Ultimately, after Mr. Naimaster

offered Mr. Perez an apology, LGX compelled Mr. Perez to make the incident "go away". LGX took no disciplinary action against Mr. Naimaster for his conduct.

14. On or about July 18, 2021, at the yearly company lunch, LGX announced Mr. Naimaster as its director of operations. Before the announcement, Mr. Greenstein and Mr. Francis also praised Mr. Dixon's work and contribution as LGX operations manager and applauded his skills and performance as operations manager in contributing to the success of LGX. Most of LGX drivers, who happen to be African Americans, were shocked, and became disgruntled with the announcement of Mr. Naimaster as LGX's director of operations. Some of them subsequently began to leave LGX and Mr. Greenstein falsely accused Mr. Dixon of being behind their actions.

15. On July 22, 2023, Mr. Greenstein sent an email confirming the promotion of Mr. Naimaster to the director of operations position and stated that: "John Dixon is maintaining his role as Operations Manager, reporting to Ray, and will continue to lead efforts related to driver onboarding, training, and fleet management. John, as well as all Drivers and Dispatchers, now report to Ray." In this email Mr. Greenstein also highlighted the successes and achievements of LGX with Mr. Dixon as operations manager, stating that during that period, LGX "grew to be the largest carrier in this Amazon program. All while leading the pack in the performance and safety numbers that Amazon monitor's so closely."

16. On or about July 26, 2021, Mr. Francis called Mr. Dixon and told Mr. Dixon that LGX eliminated the operations manager position and Mr. Dixon was fired. In a July 27, 2021, email to LGX employees about firing Mr. Dixon, Mr. Greenstein noted that Mr. Dixon "made significant contributions to LGX" and wished "him all the best in his future endeavors."

However, LGX acted to fire the only African American occupying one of its' top five (5) leadership position and fired Mr. Dixon under illegal discriminatory circumstances.

17. On or about July 15, 2021, Mr. Greenstein fired Mr. Joe Mann, an African American driver, after Mr. Mann asked Mr. Greenstein whether Mr. Greenstein was treating Mr. Mann differently from white drivers because of the color of Mr. Mann's skin as a black person. Furthermore, LGX repeatedly allowed white drivers to work less required hours while getting the same pay with African American driver who LGX compel to work required hours and often hours in excess of standard set by transportation regulations. LGX allows white drivers to frequently remove loads from their trips while LGX discipline black drivers for the same action. LGX allows white drivers to improperly delete routes from their system to ensure that they meet their quotas and discipline black drivers for attempting the same action.

18. On or about November 29, 2022, the EEOC issued a probable cause determination, after its processing and investigation of Mr. Dixon's charge of discrimination. The EEOC determined that: "there is reasonable cause to believe that Respondent discriminated against Charging Party when it failed to promote him in July 2021 and when he was discharge on July 26, 2021."

### VII.   COUNT ONE
**(Race Discrimination in Violation of Title VII, Section 1981 and Title 20)**

15. Mr. Dixon realleges the foregoing paragraphs as though fully set forth herein.

16. Mr. Dixon is a member of a protected class on the basis of race.  He is an African American male.

17. Mr. Dixon, in all respects, was performing his job in a manner that was consistent with LGX's legitimate business expectations.

18. LGX discriminated against Mr. Dixon as outlined in the forgoing paragraphs, including but not limited to rescinding and denying him the promotion to the director of operations position and firing him.

19. LGX's actions were taken with a willful and went on disregard of Mr. Dixon's rights under Title VII, Section 1981, and Title 20.

20. As a direct and proximate result of said unlawful employment practices and in disregard of Mr. Dixon's rights and sensibilities, Mr. Dixon has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## VIII.   COUNT TWO
### (Retaliation in Violation of Title VII, Section 1981, and Title 20)

21. Mr. Dixon incorporates all preceding and following paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto Plaintiff was subjected to retaliation for engaging in protected activities in violation of Title VII, Section 1981, and Title 20.

22. Mr. Dixon reasonably believes that he engaged and was engaging in protected activities when he encouraged Mr. Perez to report and follow up on Mr. Naiemaster discriminatory statement about African American drivers.

23. In response to Plaintiff's protected activities, LGX fired Mr. Dixon. This constitutes adverse action by Defendant and was causally linked to Plaintiff's protected activities.

24. Defendant was fully aware of the retaliatory acts against Plaintiff detailed in the foregoing paragraphs and were deliberately indifferent by disregarding the known or obvious conduct toward Plaintiff, and actually participated in the retaliation against Plaintiff.

25. As a direct and proximate result of the discriminatory retaliation, Plaintiff has suffered a loss of income and benefits, and has suffered injury to his reputation, injury to his career, pain, mental anguish, and humiliation; and faces irreparable harm and future losses.

## IX.  PRAYER FOR RELIEF

**WHEREFORE**, Mr. Dixon prays that this Court enters judgment in his favor and grant Mr. Dixon the maximum of relief allowed by law, including, but not limited to:

(a)  compensatory and punitive damages of $1,000,000;

(b)  back pay and front pay;

(c)  a declaration that Defendant's actions violated Title VII, and Section 1981;

(d)  Attorney's fees, and costs;

(e)  both pre-judgment and post-judgment interest; and

(f)  any such other relief as are just and equitable under the circumstances.

## X.  JURY DEMAND

Mr. Dixon requests a trial by jury on all issues and Counts stated herein.

Respectfully Submitted,

*/s/ George Rose*
George A. Rose, Esquire
Federal Bar Number: 26086
Rose Law Firm, LLC
9134 Liberty Road
Baltimore, MD  21133
Ph: 410-727-7555 / Fax: 443-320-0962
Email: grose@roselawfirm.net
Attorney for *Plaintiff Mr. John Dixon*