IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| JOHN C. DIXON, | * |
| *Plaintiff*, | * |
| v. | * Civil Case No.: 1:23-cv-00703-JMC |
| LGX SERVICES, LLC, | * |
| *Defendant*. | * |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff John C. Dixon ("Dixon") filed suit against Defendant LGX Services, LLC ("LGX") on March 15, 2023 for employer race discrimination in violation of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981, and Title 20 of Maryland's State Government Article. (ECF No. 1). Dixon asserts two counts: (1) Race Discrimination in Violation of Title VII, Section 1981 and Title 20, and (2) Retaliation in Violation of Title VII, Section 1981, and Title 20. (ECF No. 1 at p. 67).[1] Currently, before the Court is LGX's Motion to Dismiss and/or Stay Proceedings and Compel Arbitration (ECF No. 19). In addition to LGX's Motion, the Court has reviewed Dixon's Opposition (ECF No. 28) and LGX's Reply (ECF No. 30). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, LGX's Motion, which is treated as a motion for summary judgment, is granted to the extent that it seeks to compel arbitration and stay proceedings pending arbitration.

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document.

**I. BACKGROUND**

On June 29, 2020, LGX, a trucking and logistics company incorporated in Virginia with its principal place of business in Maryland, hired Dixon, an African American citizen residing in Maryland, as a Class A CDL driver. (ECF No. 1 at p. 3, ¶¶ 2–3, 9). On October 20, 2020, Dixon was promoted to Operations Manager. *Id.* at p. 3, ¶ 10. In March of 2021, Dixon had the opportunity to be promoted again to Director of Operations, but the position was instead given to "Ray Naimaster, a white LGX driver who was a subordinate of Mr. Dixon, and who Mr. Dixon had trained." *Id.* at p. 4, ¶ 11. In July of 2021, Dixon encouraged another LGX driver to report a racially offensive remark made by Mr. Naimaster. *Id.* at p. 4, ¶ 13. On July 26, 2021, Dixon was told that LGX eliminated the position of Operations Manager, and Dixon was subsequently fired. *Id.* at p. 5, ¶ 16.

Two contracts are relevant to LGX's Motion. The First is Dixon's Employment Agreement ("Employment Agreement") (ECF No. 21),[2] signed in July 2020 when LGX hired Dixon as a Class A CDL driver. (ECF No. 30 at p. 1). The Employment Agreement contains an arbitration provision, which the Court will provide in full within the Court's analysis in Section III of this Opinion. (ECF No. 21 at p. 5, ¶ 21). The second relevant contract is Dixon's Offer Letter ("Offer Letter") (ECF No. 28-3), signed in October 2020 when LGX promoted Dixon to Operations Manager. (ECF No. 30 at p. 2). The Offer Letter contains a provision entitled "Entire Agreement," which provides in part that "[the] letter constitutes the entire agreement between you and the Company regarding the matters described in this letter . . . ." (ECF No. 28-3 at p. 1, ¶ 6). LGX argues that, pursuant to the Employment Agreement's arbitration provision, Dixon is compelled

---

[2] When LGX filed its Motion on May 5, 2023, LGX did not attach the Employment Agreement. However, LGX submitted the Employment Agreement in a separate filing (ECF No. 21) on May 8, 2023.

to arbitrate his claims, notwithstanding the absence of such a provision in Dixon's later Offer Letter. (ECF No. 19 at p. 1).

## II.  STANDARD OF REVIEW

LGX moves for dismissal, or in the alternative, to compel arbitration and stay the proceedings under § 3 and § 4 of the Federal Arbitration Act ("FAA"). Under the FAA, all written contracts containing an arbitration provision and "evidencing a transaction involving commerce . . ." are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." *See* 9 U.S.C. § 2. "The Supreme Court [of the United States] has made it plain that judicial protection of arbitral agreements extends to agreements to arbitrate statutory discrimination claims." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999); *Ratliff v. CoStar Realty Info., Inc.*, No. 11-0813, 2011 WL 2680585, at *2 (D. Md. July 7, 2011) (recognizing in a case involving Title VII and Title 20 that "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions.") (other citation omitted). "In *Gilmer v. Interstate/Johnson Lane Corp.*, the Court noted that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Hooters of Am., Inc.*, 173 F.3d at 937 (other citations

and internal quotation marks omitted).[3]  "The Supreme Court of the United States has interpreted the FAA to reflect a 'liberal federal policy favoring arbitration agreements.'"  *Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc.*, 257 F. Supp. 3d 735, 741 (W.D. Va. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  In "the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce,[4] and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'"  *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)); *see also* 9 U.S.C. §§ 3–4.  Regarding a party's demand for a jury trial under Section 4 of the FAA, "the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support."  *Chorley Enters., Inc. v. Dickey Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (other citations omitted).  "The FAA requires a court to stay 'any suit or proceeding'

---

[3] Of course, a party such as Plaintiff may escape the terms of its bargain if "Congress intends to preclude waiver of a judicial forum for the statutory claims at issue."  *Id.*  However, "[s]uch an intent . . . must be discoverable in the text of the [substantive statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes."  *Id.* (other citation and internal quotation marks omitted).  The Fourth Circuit has dispelled the contention that "Congress evinced an intent to prohibit predispute agreements to arbitrate claims arising under Title VII."  *Id.*  "The Civil Rights Act of 1991 provided that 'Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under [Title VII.]'"  *Id.* (quoting Pub. L. No. 102–66, § 118, 105 Stat. at 1081).  This language "could not be any more clear in showing Congressional favor towards arbitration."  *Hooters of Am., Inc.*, 173 F.3d at 937 (quoting *Austin v. Owens Brockway Glass Container, Inc.*, 78 F.3d 875, 881 (4th Cir. 1996)).

[4] "This element requires that the transaction 'in fact involved interstate commerce' in that it implicates any part of the 'full scope of Congress's commerce-clause power,' but it does not require that the parties contemplated an interstate transaction at the time of the arbitration agreement."  *James v. Synovus Bank*, No. TDC-19-1137, 2020 WL 1479115, at *4 (D. Md. Mar. 26, 2020) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012)).  Moreover, the Supreme Court has interpreted this requirement that the transaction involved commerce broadly and accepts "affecting commerce" as its "functional equivalent."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995)).  The case *sub judice* involves the employment relationship between a Virginia limited liability company and a citizen of Maryland.  Even if Dixon challenged this element—which he does not—the Court would find it satisfied.

pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Dome Tech., LLC*, 257 F. Supp. 3d at 741 (quoting 9 U.S.C. § 3).

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004)). "When a party moves to compel arbitration and the validity of the purported arbitration agreement between the parties is disputed, the motion is treated as one for summary judgment." *Guanyu Li v. StockX.com*, 349 F. Supp. 3d 517, 521 (D. Md. 2018). Here, Dixon challenges the validity of the arbitration agreement, so the Court will treat LGX's Motion as a motion for summary judgment. Fed. R. Civ. P. 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental*, Inc., 962 F. Supp. 2d 792, 799–800 (D.

Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). The party resisting arbitration must make the showing that the claims should be settled by litigation rather than arbitration. *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

**III.   ANALYSIS**

The parties do not dispute the relevance of the FAA in the Court's determination of LGX's Motion. As such, they agree that if the four *Adkins* elements enumerated above are satisfied, then the case *sub judice* should proceed through arbitration rather than through judicial proceedings before this Court. However, Dixon argues that the second and fourth[5] *Adkins* elements are not satisfied. Specifically, regarding the second element, Dixon makes two arguments: (1) the original, written Employment Agreement containing the arbitration provision is superseded by the Offer Letter, and alternatively, (2) if the Employment Agreement is valid, the scope of the arbitration provision does not cover the basis of Dixon's claim, i.e., the alleged employment discrimination against and unlawful termination of Dixon. Thus, whether this Court can grant LGX's Motion depends on whether the evidence is such that a reasonable jury could return a verdict in favor of Dixon regarding the validity and scope of the arbitration provision. *See J.E. Dunn Const. Co.,* 115 F. Supp. 3d at 600; *see also Hooters of Am., Inc.*, 173 F.3d at 938 (quoting *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002)) (stating that as a preliminary matter, a court should "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid

---

[5] While Dixon argues that the fourth element is not satisfied because he did not "fail, neglect, or refuse to arbitrate the dispute and claims arising from his employment agreement and firing as operations manager for LGX[,]" the Court recognizes that this argument is a by-product of Dixon's contention that no arbitration provision applied to that employment.

agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."). For the reasons provided immediately below, this Court finds that there is no genuine dispute of material fact regarding the validity and scope of the Employment Agreement's arbitration provision, and the parties shall be compelled to pursue arbitration.

    **1.**    **The Arbitration Provision in the Employment Agreement Is Valid.**

Dixon acknowledges that the Employment Agreement once contained a valid arbitration provision. (ECF No. 28-1 at p. 1). However, he argues that the Offer Letter, which does not contain an arbitration provision, "superseded and replaced" the Employment Agreement and effectively terminated any obligation to arbitrate. *Id.* at p. 5. The ongoing effectiveness of the Employment Agreement, and subsequently, the arbitration provision located therein, requires a contract interpretation analysis.

    ***a. Choice-of-Law Provision***

Before proceeding with the analysis, this Court must first determine the law that applies. "Under the FAA, the Court must apply the 'federal substantive law of arbitrability,' which directs the Court to rely on 'ordinary state-law principles that govern the formation of contracts' to determine whether the parties agreed to arbitrate." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 253 (D. Md. 2011) (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)). Accordingly, "[t]he question of whether an enforceable arbitration agreement exists between [the parties] is a matter of contract interpretation governed by state law . . . ." *Rota-McLarty*, 700 F.3d at 699; *see also StockX.com*, 349 F. Supp. 3d at 521 ("Although arbitrability is a question of federal law, applicable state contract law controls whether the parties have a valid agreement to arbitrate."). "Although Maryland law, which governs the choice-of-law question, generally applies the law of [the] state in which the contract was formed, if the contract contains a valid

7

choice-of-law provision, it will apply the law of the jurisdiction identified in that clause." *James*, 2020 WL 1479115 at *2 (citing *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015)).

In the Employment Agreement, the parties agreed to a choice-of-law provision located at Section 20. (ECF No. 21 at p. 5, ¶ 20). Specifically, the provision states:

> Governing Law. This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia without regard to any applicable principles of conflicts of laws.

*Id.* Pursuant to the provision, LGX contends, and Dixon does not dispute, that Virginia law should govern the validity of the Employment Agreement's arbitration provision. Under Maryland law, there is a presumption that a choice-of-law provision is valid and enforceable. *See Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 396 (D. Md. 2015). Maryland has relied on the Restatement (Second) of Conflict of Laws regarding choice of law inquiries, which states:

> [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless* . . . the chosen state *has no substantial relationship* to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would *be contrary to a fundamental policy* of a state which has a *materially greater interest* than the chosen state in the determination of the particular issue . . . .

*Ameritox, Ltd.*, 92 F. Supp. 3d at 396 (quoting Restatement (Second) of Conflict of Laws § 187(2)(b) (1971)) (emphasis in original).

Virginia has a substantial relationship to the parties, as it is the state of LGX's incorporation. Maryland law does not have a contrary, fundamental policy governing contract interpretation, and Dixon does not challenge the application of Virginia law. Therefore, this Court will apply Virginia law in interpreting the relevant contracts. *See, e.g.*, Restatement (Second) of Conflict of Laws § 187 (1971) (citing *NuVasive, Inc. v. Day*, 954 F.3d 439, 443–44) ("The court pointed out that Delaware had a substantial relation to the parties because manufacturer was

incorporated in Delaware, and that employee failed to show that application of Delaware law would be contrary to a fundamental policy of Massachusetts.").

### b. Contract Interpretation Under Virginia Law

As stated above, the parties dispute whether the terms of the Offer Letter superseded the Employment Agreement's arbitration provision. Importantly, "[w]hen the parties dispute whether an obligation to arbitrate exists the presumption in favor of arbitration does not apply." *Dome Tech., LLC*, 257 F. Supp. 3d at 741–42 (other citations and internal quotation marks omitted). Under Virginia law,

> Contracts between parties are subject to basic rules of interpretation. Contracts are construed as written, without adding terms that were not included by the parties. . . . Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. . . . A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. . . . Furthermore, contracts must be considered as a whole, without giving emphasis to isolated terms. . . . Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless word in the contract.

*TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 119 (2002) (internal citations and quotation marks omitted). Where two parties dispute the interpretation of a contract provision, the language of that provision will only be construed as ambiguous if such a construction is reasonable. *See Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 29–30 (2019) (quoting *Caldwell v. Transp. Ins.*, 234 Va. 639, 643 (1988)) ("ambiguity exists where reasonable men . . . may reach reasonable, but opposite, conclusions regarding the meaning of the disputed provision"). "A 'reasonable' or 'fairly claimed' interpretation is one of two competing interpretations that are 'equally possible' given the text and context of the disputed provision." *Id.* Therefore, the contract must be construed as a whole, without placing substantial emphasis on a particular isolated term.

*See Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179–80 (2016).  Here, the parties dispute the meaning of the following provision within the Offer Letter:

> 6. **Entire Agreement.** This offer letter constitutes the *entire agreement* between you and the Company *regarding the matters described in this letter*, and *supersedes and replaces* any prior understandings or agreements, whether oral, written or implied, between you and the Company *relating to such subject matter*.

(ECF No. 28-3 at p. 1, ¶ 6) (emphasis added).

Dixon contends that because the Offer Letter states that it "supersedes and replaces any prior understandings or agreements, whether oral, written or implied, between you and the Company relating to such subject matter[,]" the Offer Letter supersedes and replaces the prior Employment Agreement.  Contrarily, LGX maintains that "[t]he arbitration agreement contained in the Employment Agreement was not canceled, modified, or changed by the Offer Letter." (ECF No. 30 at p. 4).  Specifically, LGX argues that "the plain language of the so-called 'merger' clause in Section 6 of the Offer Letter demonstrates the parties did not intend the Offer Letter to repudiate the entire Employment Agreement," and that "[t]he language of the Offer Letter was intended only to amend certain, specific terms of the Employment Agreement to correspond with the Plaintiff's new management role and title."  *Id.* at pp. 3–5.

Applying the general principles of contract interpretation, this Court views the Offer Letter's Section 6 in light of the contract as a whole.  In doing so, Section 6 cannot be reasonably interpreted as superseding and replacing the entire Employment Agreement.  As indicated above, Section 6 of the Offer Letter specifically acknowledges that the Offer Letter constitutes the entire agreement of the parties only regarding the subject matter contained therein.  The Offer Letter makes no mention of the subject of arbitration.  Therefore, the Offer Letter could not have superseded or replaced any contractual obligation stemming from the Employment Agreement's arbitration provision.

10

This point is further emphasized when considering Section 3 of the Offer Letter. Section 3 concerns the "employment relationship" between the parties, i.e., it classifies the relationship as "at will." (ECF No. 28-3 at p. 1). In the Employment Agreement, Section 12 classifies the relationship between the parties as "at-will" but subject to specific notice requirements delineated in Section 5 of the Employment Agreement. (ECF No. 21 at p. 4). However, Section 3 of the Offer Letter makes no mention of notice requirements and purports to be "the full and complete agreement between [the parties] *on this term*." (ECF No. 28-3 at p. 1) (emphasis added). If, as Dixon argues, Section 6 of the Offer Letter acted to supersede the entirety of the Employment Agreement, such language as emphasized immediately above would be rendered redundant and needless. The Court cannot abide such an interpretation.

For these reasons, the Court cannot read the Offer Letter as superseding the Employment Agreement in its entirety. There is no ambiguity in the Offer Letter, and it is evident that the Offer Letter superseded the Employment Agreement only to the extent that the Offer Letter specifically addressed subject matter common to both agreements. Accordingly, the arbitration agreement located within the Employment Agreement remains in effect.[6]

### 2.    The Dispute Underlying Plaintiff's Complaint Is Within the Scope of the Arbitration Agreement.

Next, Dixon contends that even if the arbitration provision within the Employment Agreement remains in effect, it does not cover the dispute presented in the case *sub judice*. "At this step of the analysis, the federal policy favoring arbitration comes into play." *Dome Tech., LLC*, 257 F. Supp. 3d at 744. "The Court must construe the arbitration clause broadly, resolving any 'ambiguities as to [its] scope . . . in favor of arbitration.'" *Id.* (quoting *Adkins*, 303 F.3d at

---

[6] Unlike the Employment Agreement, the Offer Letter contains no choice-of-law provision. The Offer Letter's silence on this topic further supports the Court's conclusion that the choice-of-law provision in the Employment Agreement remains in effect and compels the application of Virginia contract law.

500). "Stated differently, the [C]ourt may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Dome Tech. LLC*, 257 F. Supp. 3d at 744 (other citations and internal quotation marks omitted). Whether the scope of the parties' agreement covers the dispute is, again, an issue of contract interpretation. *See Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) ("The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement.").

Dixon points to the arbitration provision in the Employment Agreement, which states:

> 21. <u>Arbitration</u>. With the exception of the right to seek injunctive relief pursuant to Section 9 of this Agreement, *any controversy or claim arising out of or relating to this Agreement*, including the making and entering into thereof, shall be subject to final and binding arbitration in Vienna, Virginia, in accordance with the rules of the American Arbitration Association then in effect. Any such arbitration shall be treated as non-complex and assigned to a single arbitrator. The Arbitrator shall be instructed to find in favor of one or another party and to award to the prevailing party, in addition to whatever damages the Arbitrator deems just under the circumstances, all reasonable costs incurred by the prevailing party in the dispute resolution process. The judgment of the Arbitrator shall be entered in any court having jurisdiction thereof. Either party shall be entitled to collect from the other any reasonable costs and attorneys' fees incurred in the collection of any judgments.

(ECF No. 21 at p. 7, ¶ 21) (emphasis added).

Dixon claims, "It is clear that the [Offer Letter] as operations manager of LGX is the subject of the dispute." (ECF No. 28-1 at p. 4). Therefore, he argues that the dispute does not arise out of or relate to the Employment Agreement. *Id.* On the other hand, LGX argues that the provision has expansive reach and covers the dispute. (ECF No. 19-1 at p. 8). This Court agrees with LGX.

Regarding Count I, the Complaint alleges that LGX discriminated against Dixon as a result of LGX "rescinding and denying [Dixon] the promotion to the director of operations position and

firing him." (ECF No. 1 at p. 6, ¶ 18). Regarding Count II, Dixon argues that he was retaliated against after being fired for encouraging the reporting of a racially offensive remark made by Mr. Naimaster. (ECF No. 1 at p. 4, ¶ 13). However, LGX claims that it terminated Dixon because it eliminated his position as Operations Manager. *Id.* at p. 5, ¶ 16. In essence, the issues involve whether LGX had a lawful reason to deny Dixon's promotion and subsequently fire him, and whether LGX's decisions were rooted in racial discrimination.

The arbitration provision contains the language "arising out of" *and* "relating to." (ECF No. 21 at p. 7, ¶ 21). Viewing such language in light of the Court's duty to resolve any ambiguities as to the scope of an arbitration clause in favor of arbitration, the Court finds no issue concluding that the dispute at least relates to the Employment Agreement because the issue concerns the termination of Dixon's employment. For one, Dixon claims that he was fired out of retaliation and not due to an adequate cause. The dispute may require a discussion of Dixon's duties as Operations Manager that are outlined in the Offer Letter, but it likely extends beyond the mere execution of these duties. *See Gen. Elec. Cap. Corp. v. Union Corp Fin. Grp. Inc.*, 142 F. App'x 150, 152 (4th Cir. 2005) ("The scope of an arbitration clause in one contract can extend to a dispute arising under a second contract, provided that the dispute significantly relates to the first agreement.") (internal quotations omitted). The Employment Agreement contains a multitude of provisions not superseded by the Offer Letter, and such provisions may very well prove relevant to the issue of Dixon's employment termination. This Court finds that the dispute sufficiently relates to matters laid out in the Employment Agreement and fits within the purview of the

Employment Agreement's arbitration provision.[7] Furthermore, the parties have offered for the Court's review nothing more than a dispute regarding their interpretations of the Offer Letter and the Employment Agreement. *See Chorley Enters., Inc.*, 807 F.3d at 563 ("In the proceedings below, neither party disputed any facts: they simply offered conflicting interpretations of the relevant agreements. . . . [T]his is precisely the type of issue we can decide as a matter of law."); *see also Tranchant v. Integon Cas. Ins. Co.*, 77 Va. Cir. 195, 1 (2008) ("This case does not involve a disputed issue of fact but is solely a question of contract interpretation which is a question of law.") (other citation omitted). There does not exist a dispute of material fact precluding this Court from concluding that the arbitration provision in the Employment Agreement survived the creation of the Offer Letter and encompasses the dispute surrounding Dixon's termination.

### 3. Dixon Has Failed to Arbitrate This Dispute.

Dixon argues that the fourth element has not been met. This element requires LGX to show that Dixon refuses or neglects to arbitrate the dispute. Dixon argues that he "did not fail, neglect, or refuse to arbitrate the dispute . . . ." (ECF No. 28-1 at p. 5). Instead, he argues that the Employment Agreement is effectively void as it was superseded by the Offer Letter. The Court has already concluded that the Employment Agreement remains valid and that only a few provisions, not including the arbitration provision, have been altered or superseded by the Offer Letter. Dixon's efforts to rebut evidence in support of arbitration indicates that Dixon has resisted to arbitrate thus far. Therefore, there is no genuine dispute of material fact regarding the fourth *Adkins* element.

---

[7] Notably, the Employment Agreement's arbitration provision indicates that the arbitration between the parties will be conducted "in accordance with the rules of the American Arbitration Association then in effect." (ECF No. 21 at p. 5). Relevant here, those rules provide, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope* or validity of the arbitration agreement." (ECF No. 30-1 at p. 13) (emphasis added).

**4.      The Court Will Stay This Case Pending Mandatory Arbitration.**

Lastly, this Court must decide whether to grant a stay pending arbitration or to dismiss the case. Circuits have been split on whether the FAA demands a stay of the proceedings or dismissal in light of a Court's finding that mandatory arbitration is required. *See Noohi v. Toll Bros.*, 708 F.3d 599, 605 n.2 (4th Cir. 2013) ("Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration.") "The Fourth Circuit has suggested on occasion that dismissal may be appropriate where all issues within a lawsuit are subject to arbitration." *StockX.com*, 349 F. Supp. 3d at 526 (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001)). However, in other decisions, it has appeared to favor a stay of the proceedings. *See, e.g.*, *Hooters of Am, Inc.*, 173 F.3d at 937 ("When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration, *id.* § 4."); *Adkins*, 303 F.3d at 500 ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory.") (internal citation omitted). While either a dismissal or stay of the proceedings is appropriate, the Court will use its discretion to issue a stay rather than a dismissal of the case.

**IV.     CONCLUSION**

For the reasons set forth above, LGX's Motion (ECF No. 19) will be granted to the extent that it seeks to compel arbitration and stay proceedings pending arbitration. A separate order follows.

Dated: <u>July 19, 2023</u>                                                             <u>        /s/         </u>
                                                                                                J. Mark Coulson
                                                                                                United States Magistrate Judge